# UNITED STATES DISTRICT COURT
для the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **24mj0902**
)
7567 El Cajon Blvd #4 )
La Mesa, California 91941 )
(Target Location) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachments A-1 (incorporated herein)

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession of a controlled substance with the intent to distribute. |
| 21 U.S.C. § 952 | Importation of controlled substances in Schedules I-V. |
| 21 U.S.C. § 960, 963 | Attempt and/or conspiracy to commit a prohibited or illegal act. |

The application is based on these facts:

See attached Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nina Plante*
Applicant's signature

Nina Plante, HSI Task Force Officer
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/27/24

*[Judge's signature]*
Judge's signature

City and state: San Diego, California         HON. KAREN S. CRAWFORD, U.S. Magistrate Judge
Printed name and title

# ATTACHMENT A-1

## DESCRIPTION OF THE PROPERTY AND PREMISES TO BE SEARCHED

The property/items to be searched are described as:

      **Target Location**:  7567 El Cajon Blvd #4
                                La Mesa, California 91941
                                County of San Diego

The premises and parts therein, including all rooms, attics, basements, garages, storage areas, safes, briefcases, containers, trash areas, trash containers, surrounding grounds, and outer buildings located at the target address.

The target address is a condominium located in La Mesa, California. The condominium is tan in color with a brown roof. The front door is brown in color and located behind a small metal gate. The number "4" is located above the garage door.

The target address is pictured below:





# ATTACHMENT B

# DESCRIPTION OF ITEMS TO BE SEIZED

There is probable cause that the following constitute evidence of violations of 21 U.S.C. sections 841(a)(1), 846, 952, 960, and 963; and that they will be found in the target location and the target vehicle described more specifically in attachment a (incorporated herein) as follows:

1. A vehicle referred to in the attached Affidavit as "V-1" described as a grey 2017 Kia Sorento bearing California license plate 9BDB413 and VIN: 5XYPG4A31HG278664.
2. Controlled substances and materials used in packaging, manufacture, cutting, weighing, cooking, or distributing controlled substances, to include the following: scales and weighing devices, measuring devices, containers and paraphernalia, and/or tools and equipment used to combine precursor chemicals into finished product.
3. Documents reflecting the possession or distribution of federally controlled substances, the acquisition of property obtained with proceeds from narcotics trafficking, and interstate and foreign travel in connection with narcotics trafficking.
4. Money, assets, and evidence of assets derived from or used in the possession or distribution of federally controlled substances and records thereof, including banking and financial institution records.
5. Firearms and accompanying accessories such as ammunition, casings, holsters, cleaning equipment, and sheaths.
6. Items or personal property tending to show identity of persons with possession, dominion, and control over L-1 or V-1.
7. Any tangible photographs which document an association with other

coconspirators and/or which display narcotics, firearms, or money and proceeds from narcotics transactions.

8. Any of the following items used by and/or belonging to S-1: computers, computer hardware, computer hard drives, discs, "thumb" drives, digital cameras, CD's, DVD's, handheld computers commonly referred to as "tablets" or "iPads", cellular phones, smart phones (commonly referred to as iPhones or Android phones), software, and data, or any other device or media capable of digitally or magnetically storing data.

9. Electronic records, communications, and data including, but not limited to: emails, text messages, photographs, audio files, videos, and location data, for the period from January 27, 2024 to, and including, the day the phone is seized pursuant to this warrant, on cellular telephones used by and/or belonging to S-1;

   A. Tending to identify efforts to possess or distribute federally controlled substances;

   B. Tending to identify accounts, facilities, storage devices, and/or services such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to possess or distribute federally controlled substances;

   C. Tending to identify co-conspirators, criminal associates, or others involved in possessing or distributing federally controlled substances;

   D. Tending to identify travel to or presence at locations involved in the possession or distribution of federally controlled substance, such as "stash houses", "load houses", or delivery points;

   E. Tending to identify the user of, or persons with control over or access to, the cellular telephone; and/or

   F. Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

All the above constituting evidence of a crime; contraband, fruits of a crime, or

2

other items illegally possessed; property designed for use, intended for use, or used in committing a crime specifically the following offenses: possession with intent to distribute controlled substance, conspiracy to distribute controlled substance, importation of controlled substance, and conspiracy to import controlled substance (21 U.S.C. sections 841(a)(1), 846, 952, 960, and 963.

      The seizure and search of cellular telephones shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, temporary files, and permanent files on the digital devices may be searched for the evidence above.

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Nina Plante, am a Task Force Officer (TFO) with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), being duly sworn, declare and state as follows:

**INTRODUCTION**

1. This affidavit is made in support of an application for a search warrant for the following vehicle and residence, described more specifically in Attachments A-1 and A-2 (incorporated herein), as follows:

   A) 7567 El Cajon Blvd #4, La Mesa, CA 91941 (**Target Location**); and

   B) Grey 2017 Kia Sorento, License Plate No.: 9BDB413, VIN: 5XYPG4A31HG278664 (**Target Vehicle**)

**TRAINING AND EXPERIENCE**

2. I have been employed as a Task Force Officer (TFO) with Homeland Security Investigations (HSI) since October 10, 2023. I am currently assigned to the HSI Office of the Special Agent in Charge, in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. During my tenure as a TFO with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

3. I am currently assigned to the San Diego Narcotics Enforcement Team task force. I generally investigate violations of the United States Code with an international nexus, including drug importation and trafficking. My main duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances in violation of Title 21 of the United States Code. As a federal law enforcement officer, I have received formal training as well as extensive on the job training and

experience relative to the investigation of narcotics trafficking, and other techniques used for contraband smuggling. I have investigated illicit narcotics, controlled substances, and other crimes that have resulted in arrests, indictments, and convictions. While participating in these and other criminal investigations, I have executed search warrants on residences and vehicles. As a result of these investigations, I have become familiar with methods and techniques used by narcotics traffickers to import narcotics into the U.S. and distribute those narcotics within the U.S. and the methods and techniques used by narcotics traffickers to derive, launder, and conceal illicit proceeds, and to use these proceeds to promote and facilitate unlawful activity.

## BASIS FOR CONCLUSIONS AND SOURCES OF INFORMATION

4. The following is based on my own investigation, oral and written reports by other law enforcement officers and agents, physical surveillances, interviews, database and public records checks, searches, telephone toll analysis, other investigation, and court authorized wire and electronic interceptions. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish a foundation for the requested warrants. Conversations and discussions below are set forth in substance unless noted. I have included in parentheses or in brackets my explanations of coded or veiled speech, based on my training and experience, as well as my familiarity with the facts of this investigation. Dates and times are approximate.

5. I respectfully submit that the facts contained below demonstrate that there is probable cause to believe that there is evidence of a crime; contraband, fruits of a crime, or other items illegally possessed; property designed for use, intended for use, or used in committing a crime, specifically the following offenses: possession with intent to distribute controlled substance, conspiracy to distribute controlled substance, importation of controlled substance, and conspiracy to import controlled substance (21 U.S.C. sections 841(a)(1), 846, 952, 960, and 963 the "Target Offenses") as described in Attachment B incorporated herein, will be found at the **Target Location** and the **Target Vehicle**, which is more fully described in Attachments A-1 and A-2, incorporated herein.

**PROBABLE CAUSE**

6. For the reasons detailed below, I believe that the **Target Location** is being used as a stash house. Based on my training and experience as a TFO, and conversations with other agents experienced in narcotics investigations, I have learned that a stash house is a location generally used to receive larger drug shipments from vehicles that have traversed the US border from Mexico. The load vehicles used to smuggle the illegal drugs are often dismantled and/or unloaded at the stash house. In turn, the bulk-packaged illegal drugs are then opened and divided into smaller quantities for shipment to other areas of the state or country to be sold.

7. On February 27, 2024, at approximately 11:34 AM, the **Target Vehicle** entered the United States from Mexico at the San Ysidro Port of Entry through vehicle lane number 18. The driver and sole occupant was identified as Magaly RODRIGUEZ Garcia. A Customs and Border Protection (CBP) Officer obtained a negative declaration from RODRIGUEZ, who stated she was going to San Diego, California. Due to a computer-generated alert, the **Target Vehicle** and RODRIGUEZ were subsequently referred for secondary inspection. A CBP Officer asked RODRIGUEZ to exit the vehicle and RODRIGUEZ was escorted to a security office, out of view of the secondary inspection area. A CBP Officer scanned the **Target Vehicle** with a Z-Portal x-ray machine. The CBP Officer observed anomalies within the roof of the **Target Vehicle**. A CBP Officer and investigators on scene conducted a physical inspection of the roof area and observed packages contained therein. Additionally, a CBP Canine Enforcement Officer (CEO) screened the **Target Vehicle** with the Officer's certified narcotics detection dog and received a positive alert on the **Target Vehicle**. Based on my training and experience, including having found packages similarly concealed in vehicles many times in the past which proved to contain drugs after field and lab testing, and my conversations with agents experienced in narcotics investigations, I believe that the packages found in the roof of the **Target Vehicle** contain narcotics.

8. To facilitate further investigation into the origin and destination of the

3

suspected narcotics, the packages were left in place in the roof of the **Target Vehicle** and not opened or inspected. Investigators then decided to follow the **Target Vehicle** to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the driver or any co-conspirators to suspect or detect that the packages had been discovered by law enforcement, investigators installed a GPS tracking device on the **Target Vehicle** at approximately 11:56 AM, so the **Target Vehicle** and the driver could leave the POE and continue to their intended destination. Prior to activating the GPS tracking device, a tracker warrant was submitted by a Homeland Security Investigations Task Force Officer. The tracker warrant was approved and signed by U.S. Magistrate Judge Karen S. Crawford, at which time the GPS tracking device was activated.

  9. The **Target Vehicle** was surveilled from the San Ysidro Port of Entry and monitored via physical surveillance by members of the San Diego Narcotics Enforcement Team (SDNET). The **Target Vehicle** proceeded to drive north on Interstate 805, exiting on Interstate 54 East. During investigators' surveillance of RODRIGUEZ driving the **Target Vehicle** during this time, investigators observed RODRIGUEZ drive in a manner consistent with patterns of counter-surveillance, which are used as a means to detect being followed.

  10. At approximately 12:31 PM, the **Target Vehicle** and RODRIGUEZ subsequently drove to Interstate 8 West and exited at El Cajon Boulevard before parking on the street in front of the **Target Location**'s parking garage. RODRIGUEZ then remained in the **Target Vehicle**, and agents continued to surveil the **Target Vehicle** and RODRIGUEZ.

  11. Approximately 1:29 PM, agents observed RODRIGUEZ start the **Target Vehicle** and drive it to an outdoor parking spot in the apartment complex. Agents continued to surveil the **Target Vehicle** while RODRIGUEZ remained sitting in the car. At approximately 1:32 PM, agents again observed RODRIGUEZ start the **Target Vehicle** and drive it to the **Target Location**, where it entered the **Target Location**'s garage for a few

minutes while the garage door remained open.[1] Next, RODRIGUEZ drove the **Target Vehicle** from the parking garage adjacent to the **Target Location** to a different nearby outdoor parking spot in the apartment complex.

12. At approximately 1:35 PM RODRIGUEZ exited the **Target Vehicle** on foot and entered the **Target Location**'s garage. The garage door closed and agents lost surveillance of RODRIGUEZ, but continued to surveil the **Target Vehicle**, which remained parked in the outdoor parking spot.

13. At approximately 7:17 PM, investigators observed an unknown individual enter the **Target Vehicle** and drive the **Target Vehicle** into the **Target Location**'s garage, with the number 4 affixed to it above the garage door, and the garage door then closed. At this time, the tracker remained active and showed the **Target Vehicle** as being in the **Target Location**'s garage. As of approximately 10:00 PM, the tracker remains active and continues to show the **Target Vehicle** as being in the **Target Location**'s garage.[2]

14. At approximately 10:05 PM, RODRIGUEZ exited the **Target Location**'s garage in the **Target Vehicle**. Shortly after exiting, investigators stopped the **Target Vehicle** and detained RODRIGUEZ.

15. Investigators ran records checks and determined that RODRIGUEZ has crossed from Mexico into the United States in tandem with SOLIS, the occupant of the **Target Location** (as discussed above), on approximately 3 different occasions in the last few days.

16. Based on my training and experience and in discussion with other law

---

[1] Both the **Target Location** and the parking spot where the **Target Vehicle** was parked are listed as number 4. All the apartments on the side of the complex where the **Target Location** is located are numbered 1-10, as are the corresponding and attached parking garages. The parking garages single-car garages and appear to correspond to the apartment numbers. I have reviewed the layout of the apartments in the complex on the apartment complex's website. Based on that review, it appears that each garage contains a door that leads directly into the corresponding apartment.

[2] During the time that investigators maintained visual surveillance of the **Target Vehicle** in and around the **Target Location**, investigators did not observe any additional persons enter, exit, or remove anything from the **Target Vehicle**.

5

enforcement personnel familiar with drug distribution and importation, I know that drug traffickers often store drugs, their proceeds, and other evidence in their vehicles and residences. Based upon this and the facts above, I believe that RODRIGUEZ crossed the **Target Vehicle** from Mexico into the United States loaded with narcotics in its roof, and potentially elsewhere as well.  I also believe that RODRIGUEZ then drove the **Target Vehicle** to the **Target Location**, where RODRIGUEZ parked it and then proceeded to wait until a co-conspirator was ready to unload the narcotics.  At approximately 19:17, when the unidentified individual entered the **Target Vehicle** and drove it into the **Target Location**'s garage, I believe that the unidentified individual was driving the **Target Vehicle** into a concealed location (the **Target Location**'s garage) where he/she and his/her co-conspirators could unload the packages from the **Target Vehicle** without being observed by the general public.

17. Additionally, based on my training, experience, and conversations with other agents experienced in narcotics trafficking,  and because investigators did not observe anybody enter into, exit, or remove anything from the **Target Vehicle** during the period of physical surveillance described above, I do not believe that the narcotics could have been unloaded anywhere other than the **Target Location**.  Moreover, I know that once drug traffickers frequently unload narcotics that have been crossed into United States, they often need to weigh, unload, and/or repackage the narcotics  I believe that the narcotics crossed into the United States inside the **Target Vehicle** continue to be stored at the **Target Location** or in the **Target Vehicle**. we believe we will find evidence including federally controlled substances, drug proceeds, and evidence of drug distribution and importation at the **Target Location** and inside the **Target Vehicle**.

### REQUEST FOR NIGHT SERVICE

18. "Stash house" is a slang term for an intermediary location wherein a smuggler can bring bulk amounts of illegal drugs for temporary storage before the drugs are delivered to their final destination. Drug traffickers who own or operate "stash houses" are often armed and pose a known hazard to officers executing search warrants; this is primarily due

6

to the large amounts of cash or valuable contraband involved in the drug trade and the fact that people in this trade tend to resort to violence to resist robbery, settle disputes, or thwart capture by law enforcement.

19. The house to be searched is in La Mesa, CA. I know it is safer for police officers to approach houses under cover of darkness. Approaching under cover of darkness tends to conceal the tactical team from the view of occupants of the target residence, thereby preventing an early warning for said occupants. Due to the violent nature of people involved in the illegal drug trade, an early warning of approaching law enforcements could afford the occupants time to potentially arm themselves and/or ambush the tactical team prior to the search warrant execution. Also, during nighttime hours there is typically less vehicular and pedestrian traffic near the target house, thus reducing the risk to civilians if the suspects fired any shots out of the house toward the approaching tactical team.

20. The flexibility of searching day or night, with only short notice, is necessary in order to seize as much of the dangerous drugs as possible before it can either be sold, distributed in the community, or destroyed. Therefore, I believe the factors mentioned above establish good cause for a nighttime endorsement.

//

## CONCLUSIONS

21. Based on all the above, my experience and training, a review of documents and other relevant information I believe to be reliable, and discussions with other law enforcement officers, it is my opinion that a person or persons to be arrested for a violation of the Target Offenses are present at the **Target Location** and/or inside the **Target Vehicle**.

22. With the above information, I formally request the issuance of a search warrant authorizing a search of the **Target Location** and the **Target Vehicle**.

23. I declare under penalty and perjury the foregoing is true and correct to the best of my knowledge and belief.

*Nina Plante*

Nina Plante

Task Force Officer

Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on February 27, 2024.

Honorable Karen S. Crawford

United States Magistrate Judge

8

other items illegally possessed; property designed for use, intended for use, or used in committing a crime specifically the following offenses: possession with intent to distribute controlled substance, conspiracy to distribute controlled substance, importation of controlled substance, and conspiracy to import controlled substance (21 U.S.C. sections 841(a)(1), 846, 952, 960, and 963.

      The seizure and search of cellular telephones shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, temporary files, and permanent files on the digital devices may be searched for the evidence above.